UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ROBERT A. WILSON,

                                        Plaintiffs,            REPORT AND
                                                               RECOMMENDATION

              -against-                                        CV 09-1394 (JFB)(ETB)

FRANK DALENE, ROY DALENE, HAMPTONS
LUXURY HOMES, INC., RAICH ENDE MALTER
& CO., LLP, MORITT HOCK HAMROFF &
HOROWITZ, LLP,

                                        Defendants.
----------------------------------------------------------------------X

TO THE HONORABLE JOSEPH F. BIANCO, UNITED STATES DISTRICT JUDGE:

       Before the court are three separate motions to dismiss, pursuant to Federal Rule of Civil

Procedure 12(b)(6), by the following defendants: (1) Frank Dalene, Roy Dalene (the "Dalenes")

and Hamptons Luxury Homes, Inc. ("HLXH") (collectively, the "HLXH Defendants"); (2)

Raich Ende Malter & Co., LLP ("REM"); and, (3) Moritt Hock Hamroff & Horowitz, LLP

("MHHH").  The pro se plaintiff, Robert Wilson ("Wilson" or "plaintiff") opposes defendants'

motions and cross-moves for the following: (1) summary judgment; (2) the appointment of a

receiver for HLXH; (3) the removal of the Dalenes and their family from employment or any

position of authority within HLXH; (4) the disqualification of James Wicks and his firm, Farrell

Fritz, P.C., from serving as counsel to the Dalenes and HLXH; and, (5) an order to the United

States Attorney's Office to prosecute James Wicks and Frank Dalene for criminal perjury.

       For the following reasons, I recommend that the defendants' motions to dismiss be

granted in their entirety and that, in light of this recommendation, plaintiff's cross-motion be

denied as moot.

FACTS

On December 11, 2003, plaintiff, on behalf of HLXH, and the Dalenes entered into an agreement to create a construction service company through the implementation of a "roll-up strategy"[1] developed by plaintiff. (Am. Compl. 2.) Pursuant to the agreement, Frank and Roy Dalene were each issued 10,000,000 shares of common stock in HLXH, thereby transferring control of HLXH from plaintiff to the Dalenes. (Am. Compl. 2.) Plaintiff resigned as Chief Executive Officer ("CEO"), Chairman of the Board and President of HLXH at that time and the Dalenes were appointed as the new CEO, President and Chief Financial Officer. (Am. Compl. 8.)

Thereafter, the HLXH Defendants issued various financial statements indicating their intention to follow the plaintiff's roll-up strategy.[2] (Am. Comp. 2, 8.) For example, HLXH's 2006 second quarter 10-QSB[3] stated that the company had started implementation of its business model by acquiring Telemark, Inc., an entity owned by the Dalenes, which occurred in April

---

[1] Neither the Amended Complaint or plaintiff's motion papers provide an explanation of the "roll-up strategy."

[2] These include the 2006 second quarter 10-QSB, the 2006 third quarter 10-QSB, the 10-KSB for both 2006 and 2007, and the 2007 10-QSB for the first, second and third quarters. (Am. Compl. 8.)

[3] A 10-QSB is "filed quarterly by reporting small business issuers" and "includes unaudited financial statements and provides a continuing view of the company's financial position and results of operations throughout the year." http://learn.westlawbusiness.com/support/formtypes.html (last visited Dec. 21, 2009). This report "must be filed for each of the first three fiscal quarters and is due within 45 days of the close of the quarter." Id.

2006.[4] (Am. Compl. 2, 8; HLXH 2006 10-KSB, annexed to Larkin Decl. as Ex. 6.) The 2006 second quarter 10-QSB also stated that HLXH planned to acquire a real estate broker and a property and casualty insurance company in 2006; however, these acquisitions did not occur. (Am. Compl. 8.) Plaintiff alleges that he became "troubled" by the HLXH defendants' actions shortly before HLXH acquired Telemark because, according to plaintiff, "[o]pportunities that would have moved the business plan of [HLXH] forward were turn[ed] down for reason[s] that did not make business sense[]." (Am. Compl. 2-3.)

Plaintiff specifically alleges that he was informed on two separate occasions by the Dalenes that corporate money had been used to pay the Dalenes' personal income taxes as well as a bill owed to defendant MHHH that belonged to a friend of the Dalenes. (Am. Compl. 3.) Plaintiff further alleges that HLXH's Chief Accounting Officer, Arthur Williams ("Williams"), was "disturbed" by the company's financial statements that were submitted to the Securities and Exchange Commission ("SEC") and that "there were items in the fourth quarter of 2006 that looked strange" to Williams. (Am. Compl. 3.)

On March 7, 2008, plaintiff, the Dalenes and Williams participated in a conference call with an investment banking firm concerning the roll-up strategy. (Am. Compl. 3.) After the conclusion of the call, Frank Dalene informed plaintiff that HLXH would not be moving forward with the roll-up strategy. (Am. Compl. 3.) That same day, plaintiff sent an email to the Dalenes requesting that they "either buy back all of the outstanding stock of [HLXH], resign as officer[s]

---

[4] Although the date of the Telemark acquisition is not pleaded in the Amended Complaint, the Court may take judicial notice of public records, such as filings made with the Securities and Exchange Commission. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ([W[here public records that are integral to a fraud complaint are not attached to it, the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those records.").

of [HLXH] or buy back Telemark from [HLXH] by returning all of their stock. (Am. Compl. 3, 9-10.) On March 10, 2008, Lee Mendelson of MHHH contacted plaintiff and advised him that "after the 2007 Form 10KSB[5] was filed with the SEC on March 31, 2008 his issue would be addressed." (Am. Compl. 3.)

On March 19, 2008, Williams sent an email to the Dalenes, MHHH and REM, outlining certain problems he found with HLXH's 2006 and 2007 10-KSB's. (Am. Compl. 3, 9.) The Dalenes responded with an email stating that Terry Most ("Most") of REM was threatening to quit as HLXH's auditor because Williams was accusing him of malpractice, which would hurt HLXH's reputation. (Am. Compl. 3, 9.) On March 20, 2008, the Dalenes terminated Williams' employment with HLXH for cause. (Am. Compl. 3-4.) Plaintiff alleges that the same day, he was "locked out of [HLXH's] offices and payments on the consultant contract his company Sea Holdings, Ltd. had with HLXH stopped being paid." (Am. Compl. 4, 10.)

On March 31, 2008, HLXH filed its 2007 10-KSB with the SEC "with a balance sheet that did not balance."[6] (Am. Compl. 4, 10.) Thereafter, on June 17, 2008, plaintiff advised C.V. Kilbane, Jr. of REM of the problems with HLXH's 10-KSB for both 2006 and 2007. (Am. Compl. 4, 10.) According to plaintiff, despite this information, REM "chose to do nothing." (Am. Compl. 4.)

HLXH filed its 2008 third quarter 10-QSB with the SEC on November 14, 2009. (Am.

_____

[5] A Form 10-KSB "is the annual report filed by reporting 'small business issuers'" and "provides a comprehensive overview of the company's business." http://learn.westlawbusiness.com/support/formtypes.html (last visited Dec. 21, 2009). This report "must be filed within 90 days after the end of the company's fiscal year. Id.

[6] According to plaintiff, the amount reported on the balance sheet was $2,209,079 when it should have been $2,033,079. (Am. Compl. 10.)

Compl. 4.) According to plaintiff, the 10-QSB states that HLXH paid both Frank and Roy Dalene $50,000 each as bonuses for the previous year, which plaintiff alleges is "a very unusual practice with only two months remaining in the present year and the company losing money." (Am. Compl. 4, 11.) Plaintiff further alleges that on November 25, 2008, the Dalenes purchased certain real property located at 159 North Main Street in East Hampton through a company known as Potato House LLC, which is owned by the Dalenes. (Am. Compl. 4-5, 11.) According to plaintiff, this purchase is "in direct conflict with [HLXH's] business plan." (Am. Compl. 5.)

On March 4, 2009, Frank Dalene informed plaintiff that the Dalenes' "decisions not to follow [plaintiff's] advice were indisputably the correct decisions to make based on present economic conditions" and further advised plaintiff that his "advice was absolutely, undeniably dead wrong." (Am. Compl. 5, 11.) Plaintiff asserts that this statement, combined with the Dalenes' alleged actions in using funds to purchase property for themselves rather than for HLXH, demonstrates that the HLXH Defendants never had any intention of pursuing plaintiff's roll-up strategy. (Am. Compl. 5.)

On December 31, 2008, HLXH filed a Form 15 with the SEC to deregister. (Am. Compl. 5, 11.) HLXH filed an amendment to its 2007 10-KSB on May 27, 2009, correcting the balance sheet. (Am. Compl. 12.)

Plaintiff brings this action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") and asserts claims for securities fraud against all defendants pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), as well as Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, alleging that defendants made materially false and misleading statements in HLXH's publicly filed financial reports. Plaintiff also asserts control

person liability claims against the individual defendants, Frank and Roy Dalene, pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t.


<span style="font-variant:small-caps">Discussion</span>

I.      Legal Standard

        A.      Motions to Dismiss

        "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  As a general rule, the court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 129 S. Ct. at 1949; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

        However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949-50 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal,129 S. Ct. at 1950.  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 129 S. Ct. at 1949 (quoting

-6-

Twombly, 555 U.S. at 557).  Although Rule 8 of the Federal Rules of Civil Procedure "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S. Ct. at 1950.  Rather, only a complaint that "states a plausible claim for relief" will survive a motion to dismiss.  Id.

Since the plaintiff herein is acting pro se, the Court is required to afford him leniency, holding his complaint to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  "Nonetheless, to survive a Rule 12(b)(6) motion, a pro se plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.'" Wrightman-Cervantes v. ACLU, No. 06 Civ. 4708, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000)).  "'[B]ald assertions and conclusions of law' are not adequate" to withstand a motion to dismiss.  Wilson v. Family Dollar Stores, No. 06-CV-639, 2007 WL 952066, at *9 (E.D.N.Y. Mar. 29, 2007) (quoting Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000)).

B.    Securities Fraud Claims

In addition, "[s]ecurities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss."  In re PXRE Group, Ltd. Sec. Litig., 600 F. Supp. 2d 510, 524 (S.D.N.Y. 2009) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007)).  Such heightened pleading requirements are found in both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(b).  See In re PXRE, 600 F. Supp. 2d at 524; see also

<u>Vladimir v. Bionevision Inc.</u>, 606 F. Supp. 2d 473, 484 (S.D.N.Y. 2009) ("Complaints alleging

securities fraud also must comply with the heightened pleading requirements of the PSLRA and

Fed. R. Civ. P. 9(b) . . . .").

        1.     <u>Rule 9(b)</u>

        Rule 9(b) of the Federal Rules of Civil Procedure requires that averments

of fraud be "state[d] with particularity."  Fed. R. Civ. P. 9(b); <u>see also</u> <u>Pollio v. MF Global, Ltd.</u>,

608 F. Supp. 2d 564, 570 (S.D.N.Y. 2009) ("It is well-established that pursuant to Fed. R. Civ. P.

9(b), a plaintiff alleging fraud must state with particularity in what respects the statements at

issue were false.").  "This pleading constraint serves to provide a defendant with fair notice of a

plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect

him against strike suits."  <u>In re PXRE</u>, 600 F. Supp. 2d at 524 (quoting <u>ATSI Commc'ns</u>, 493

F.3d at 99) (additional citation omitted).  To satisfy Rule 9(b), a plaintiff alleging fraud must:

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent."  <u>In re PXRE</u>, 600 F. Supp. 2d at 524 (quoting <u>Rombach v. Chang</u>, 355 F.3d 164, 170

(2d Cir. 2004)); <u>see also</u> <u>Vladimir</u>, 606 F. Supp. 2d at 484 (same); <u>In re DRDGold Ltd. Secs.</u>

<u>Litig.</u>, 472 F. Supp. 2d 562, 567 (S.D.N.Y. 2007) (same).  "Allegations that are conclusory or

unsupported by factual assertions are insufficient."  <u>ATSI Commc'ns</u>, 493 F.3d at 99.

        2.     <u>The PSLRA</u>

        The PSLRA has expanded the requirements of Rule 9(b) within the

context of securities fraud litigation.  <u>See</u> 15 U.S.C. § 78u-4(b); <u>see also</u> <u>In re PXRE</u>, 600 F.

Supp. 2d at 524.  In addition to complying with the particularity requirement of Rule 9(b),

plaintiffs alleging securities fraud must also "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b); see Pollio, 608 F. Supp. 2d at 570; Vladimir, 606 F. Supp. 2d at 484; see also Dura Pharms, Inc. v. Broudo, 544 U.S. 336, 345 (2005) ("The [PSLRA] insists that securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.").  "Therefore, '[w]hile we normally draw reasonable inferences in the non-movant's favor on a motion to dismiss,' the PSLRA 'establishes a more stringent rule for inferences involving scienter' because the PSLRA requires particular allegations giving rise to a strong inference of scienter."  ECA, Loc. 134 IBEW Joint Pension Trust v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009) (quoting Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 194 (2d Cir. 2008)) (alteration in original).  Accordingly, "[s]ecurities fraud actions based on 'an unsupported general claim' constitute 'bare pleadings' and cannot survive a motion to dismiss."  Vladimir, 606 F. Supp. 2d at 484 (quoting In re Scholastic Corp. Secs. Litig., 252 F.3d 63, 72-73 (2d Cir. 2001)) (additional citation omitted).


II.     Plaintiff's Section 10(b) and Rule 10b-5 Claims

"Section 10(b) of the Exchange Act is designed to protect investors by serving as a 'catchall provision' which creates a cause of action for manipulative practices by defendants

acting in bad faith." In re PXRE, 600 F. Supp. 2d at 527 (quoting In re Openwave Sys. Secs.

Litig., 528 F. Supp. 2d 236, 249 (S.D.N.Y. 2007)) (additional citation omitted). Specifically,

Section 10(b) prohibits the use of "any manipulative or deceptive practice 'in connection with

the purchase or sale of any [registered] security . . . .'" Vladimir, 606 F. Supp. 2d at 484

(quoting 15 U.S.C. § 78j(b)) (alteration in original).

Rule 10b-5, promulgated by the SEC pursuant to Section 10, "more specifically

delineates what constitutes a manipulative or deceptive [practice]," In re DRDGold, 472 F.

Supp. 2d at 567 (quoting Press v. Chemical Inv. Servs. Corp., 166 F.3d 529, 534 (2d Cir. 1999)),

and makes it unlawful for any person:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Accordingly, to state a claim for relief under Section 10(b) and Rule 10b-5, a plaintiff

must allege the following elements: "(1) a material misrepresentation (or omission); (2) scienter,

i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4)

reliance, often referred to in cases involving public securities markets (fraud-on-the-market

cases) as 'transaction causation;' (5) economic loss; and (6) 'loss causation,' i.e., a causal

connection between the material misrepresentation and the loss." Vladimir, 606 F. Supp. 2d at

484 (quoting <u>Dura Pharms</u>, 544 U.S. at 341-42); <u>In re PXRE</u>, 600 F. Supp. 2d at 527 (same); <u>see</u> <u>also</u> <u>ECA, Loc. 134 IBEW Joint Pension Trust</u>, 533 F.3d at 197 ("In order to succeed on a claim, a plaintiff must establish that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff."); <u>Trinity Bui v. Industrial Enter.</u> <u>of Am., Inc.</u>, 594 F. Supp. 2d 364, 370 (S.D.N.Y. 2009) ("To adequately state a cause of action for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must assert facts showing that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury."). Breaches of fiduciary duty or "corporate mismanagement" do not rise to the level of securities fraud under Section 10(b). <u>Santa Fe Indus. v. Green</u>, 430 U.S. 462, 476, 479 (1977); <u>Luce v. Edelstein</u>, 802 F.2d 49, 55 (2d Cir. 1986) (upholding district court's finding that "allegations of mismanagement do not state a claim under Section 10(b)").

A.    <u>Purchase or Sale of a Security</u>

As set forth in the text of Section 10(b), to succeed on a claim for securities fraud, a plaintiff must establish that the alleged fraudulent statement or deceptive act occurred "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b); <u>see also</u> <u>Stoneridge</u> <u>Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, 552 U.S. 148, 160 (2008); <u>Ingenito v. Bermec</u> <u>Corp.</u>, 376 F. Supp. 1154, 1170 (S.D.N.Y. 1974) (noting that a Section 10(b) claim requires that the fraudulent statement be "in connection with a purchase or sale of securities . . . rather than their mere holding or retention"). The only securities transaction alleged in the Amended Complaint occurred in December 2003, when plaintiff transferred his shares in HLXH to the

Dalenes as part of their business agreement "to create a construction service company through a roll-up strategy developed by the Plaintiff." (Am. Compl. 2, 8.) There is no other purchase or sale of securities of any kind alleged in the Amended Complaint. Accordingly, because an essential element of plaintiff's claim is the demonstration of his reliance on defendants' alleged misstatements in purchasing or selling a security, any alleged misrepresentation must have taken place prior to December 2003.

However, plaintiff fails to allege any fraudulent misrepresentations whatsoever, let alone with the particularity required by Rule 9(b) and the PSLRA, made by any of the defendants prior to December 2003. Rather, the Amended Complaint is replete with statements allegedly made by the HLXH Defendants beginning in 2006 and continuing through 2009, which plaintiff contends to be fraudulent.[7] Plaintiff takes great pains to detail the various public filings made by the HLXH Defendants from 2006 to 2009 and the various statements contained within them. Yet plaintiff fails to establish any connection between these alleged misstatements and a purchase or sale of securities, particularly since the only securities transaction alleged to have taken place preceded the statements that plaintiff asserts are fraudulent. Accordingly, plaintiff has failed to allege an actionable misrepresentation made in connection with a purchase or sale of securities.

B.      Material Misrepresentation

"The materiality of a misstatement depends on whether 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act].'"

---

[7] Plaintiff does not allege a single misrepresentation made by defendants MHHH or REM anywhere in the Amended Complaint but instead appears to assert an aiding and abetting claim against those defendants, discussed infra.

ECA, Loc. 134 IBEW Joint Pension Trust, 553 F.3d at 197, 231-32 (quoting Basic Inc. v.

Levinson, 485 U.S. 224, 240 (1988)) (additional quotation omitted).  Accordingly, for an alleged

misrepresentation to be material, "there must be a substantial likelihood that the disclosure of the

omitted fact would have been viewed by the reasonable investor as having significantly altered

the 'total mix' of information made available."  ECA, Loc. 134 IBEW Joint Pension Trust, 553

F.3d at 197 (quoting Basic Inc., 485 U.S. at 231-32) (additional quotation omitted).  In

determining whether an alleged misrepresentation is material, courts "must engage in a fact-

specific inquiry."  ECA, Loc. 134 IBEW Joint Pension Trust, 553 F.3d at 197 (citing Basic Inc.,

485 U.S. at 240).

In addition, as stated supra, to adequately allege a material misrepresentation, plaintiff is

required to plead with particularity the specific statements he contends are fraudulent, the

identity of the speaker, the time and place that the statements were made and why the statements

are fraudulent.  See In re PXRE, 600 F. Supp. 2d at 524.  The Amended Complaint wholly fails

to satisfy this standard.

With respect to the only securities transaction alleged in the Amended Complaint, as

discussed supra, plaintiff makes general and conclusory allegations that the HLXH Defendants

failed to fulfill "the commitment made to the [plaintiff] when the partnership was formed in

December 2003," (Am. Compl. 10), that the Dalenes "were fully aware that they had agreed with

the Plaintiff to move forward with the planned roll-up strategy and that is the only reason the

Plaintiff agreed to the partnership and merger," (Am. Compl. 13-14), and that "[a]ll defendants

were aware that stockbrokers and investor[s] were informed of the [roll-up] strategy . . . and that

was the only reason they purchased [the] stock."  (Am. Compl. 14.)  However, plaintiff fails to

provide any specifics with respect to these allegations, as required by Rule 9(b) and the PSLRA.

Plaintiff does not specify what specific statements he asserts to be fraudulent, let alone who

made them or where and when they occurred.  Nor does plaintiff explain why such statements

are fraudulent.

Accordingly, plaintiff has failed to adequately allege a material misrepresentation to

sustain a claim for securities fraud under Section 10(b) or Rule 10b-5.

C.    Scienter

Plaintiff similarly fails to sufficiently allege scienter.  In order to adequately plead

scienter under the PSLRA, a plaintiff must "state with particularity facts giving rise to a *strong*

inference that the defendant acted with the required state of mind."  In re PXRE, 600 F. Supp. 2d

at 527 (quoting 15 U.S.C. § 78u-4(b)(2)) (emphasis in original); see also In re DRDGold, 472 F.

Supp. 2d at 570 ("The PSLRA requires that the complaint allege sufficient facts to support a

strong inference of the requisite state of mind.").  "The requisite state of mind in a Rule 10b-5

action is an intent to deceive, manipulate or defraud."  In re PXRE, 600 F. Supp. 2d at 527

(quoting Ganino v. Citizens Utils. Co., 228 F.3d 154, 168 (2d Cir. 2000)) (additional quotation

and internal quotation marks omitted); see also ECA, Loc. 134 IBEW Joint Pension Trust, 553

F.3d at 198.

In interpreting the PSLRA's "strong inference" requirement, the Supreme Court has held

that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the

court must take into account plausible opposing inferences."  In re PXRE, 600 F. Supp. 2d at 528

(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509

(2007).  For a complaint to survive dismissal, the inference of scienter must be "more than

merely plausible or reasonable - it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." ECA, Loc. 134 IBEW Joint Pension Trust, 553 F.3d at 198 (quoting Tellabs, 127 S. Ct. at 2504-05) (additional quotation omitted). In assessing whether a strong inference of scienter is adequately alleged, "a court must be careful to consider whether '*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" In re PXRE, 600 F. Supp. 2d at 528 (quoting Tellabs, 127 S. Ct. at 2509) (emphasis in original). In short, courts "must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged, taken collectively." ECA, Loc. 134 IBEW Joint Pension Trust, 553 F.3d at 198 (citing Tellabs, 127 S. Ct. at 2504, 2509).

A plaintiff can fulfill the scienter requirement by establishing either (1) that defendants had the motive and opportunity to commit fraud, or (2) facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness." ECA, Loc. 134 IBEW Joint Pension Trust, 553 F.3d at 198 (citing cases); see also In re PXRE, 600 F. Supp. 2d at 528; Trinity Bui, 594 F. Supp. 2d at 270; In re DRDGold, 472 F. Supp. 2d at 570. "Motive and opportunity can be established by demonstrating that defendants benefitted 'in a concrete and personal way' from the alleged fraud." Trinity Bui, 594 F. Supp. 2d at 370 (quoting Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000)); see also In re DRDGold, 472 F. Supp. 2d at 570 ("Plaintiffs' allegations of motive must entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged."). However, motives common to "virtually all corporate insiders" or "any publicly owned, for profit endeavor," In re DRDGold, 472 F. Supp. 2d at 570 (quoting Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001), such as "a desire for the

corporation to appear profitable [are] 'insufficient' to plead motive."  In re Merrill Lynch, 272 F.

Supp. 2d at 262 (quoting Kalnit, 264 F.3d at 139-40).

To plead scienter through conscious misbehavior or recklessness, a plaintiff must allege

"at the least, conduct which is highly unreasonable and which represents an extreme departure

from the standards of ordinary care to the extent that the danger was either known to the

defendant or so obvious that the defendant must have been aware of it."  ECA, Loc. 134 IBEW

Joint Pension Trust, 553 F.3d at 203 (quoting Kalnit, 264 F.3d at 142) (additional quotation

omitted); In re DRDGold, 472 F. Supp. 2d at 571 (same); In re Merrill Lynch, 272 F. Supp. 2d at

263 (same).  "Recklessness in the scienter context cannot be merely enhanced negligence."  In re

PXRE, 600 F. Supp. 2d at 535 (quoting In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595,

624 (S.D.N.Y. 2005)).  More specifically, "an allegation that a defendant merely 'ought to have

known' is not sufficient to allege recklessness."  In re PXRE, 600 F. Supp. 2d at 535 (quoting

Hart v. Internet Wire, Inc., 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001)) (additional quotation

omitted).  Accordingly, "[t]o satisfy this 'highly fact-based inquiry,' a complaint must

'specifically allege[] defendants' knowledge of facts or access to information contradicting their

public statements.'"  In re Merrill Lynch, 272 F. Supp. 2d at 263 (quoting Kalnit, 264 F.3d at

142).

The within Amended Complaint is completely devoid of any allegations that raise a

strong inference that the HLXH Defendants acted with scienter.  The thrust of plaintiff's

assertions is that "Defendants never had any intention of pursuing the roll-up strategy" allegedly

agreed to in 2003.  (Am. Compl. 5.)  However, plaintiff offers no facts to support this assertion.

There is nothing in the Amended Complaint that raises even a remote inference that, at the time

the HLXH Defendants and plaintiff entered into their agreement in 2003, defendants made any false statements concerning implementing plaintiff's roll-up strategy. Nor is there anything pleaded that would permit the Court to infer that defendants never had any intention of carrying out the agreed upon roll-up strategy at the time they entered into their agreement with plaintiff. Rather, plaintiff alleges in the Amended Complaint that the Dalenes advised him in March 2009 that the decision not to implement the roll-up strategy was based on "present economic conditions." (Am. Compl. 5, 11.) I find that this may be an equally plausible explanation for the failure to follow through on the agreed upon plan.

Accordingly, plaintiff has failed to adequately plead scienter as required under the PSLRA.

D.    Causation

Finally, to state a claim for securities fraud, a plaintiff must adequately plead both transaction causation and loss causation. See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 196-97 (2d Cir. 2003); Trinity Bui, 594 F. Supp. 2d at 370; In re DRDGold, 472 F. Supp. 2d at 575. "[T]ransaction causation refers to the causal link between the defendant's misconduct and the plaintiff's decision to buy or sell securities." Emergent Capital, 343 F.3d at 197 (citing Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 186 (2d Cir. 2001)). To establish transaction causation, plaintiff must demonstrate that "but for the claimed misrepresentations or omissions, [he] would not have entered into the detrimental securities transaction." Emergent Capital, 343 F.3d at 197 (citing Castellano, 257 F.3d at 186); Trinity Bui, 594 F. Supp. 2d at 370 (citation omitted).

"Loss causation, by contrast, is the causal link between the alleged misconduct and the

economic harm ultimately suffered by the plaintiff." Emergent Capital, 343 F.3d at 197 (citing Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 96 (2d Cir. 2001)); see also In re Merrill Lynch, 272 F. Supp. 2d at 261 ("To establish loss causation, a plaintiff must show[] that the economic harm it suffered occurred as a result of the alleged misrepresentations."). To demonstrate loss causation, the loss must be "foreseeable and . . . caused by the materialization of the concealed risk." Trinity Bui, 594 F. Supp. 2d at 371 (quoting Lentell v. Merrill Lynch & Co. 396 F.3d 161, 172 (2d Cir. 2005)); In re DRDGold, 272 F. Supp. 2d at 575 (same).

As discussed supra, plaintiff fails to connect any alleged misrepresentations with his 2003 securities transaction. All of the alleged misrepresentations by defendants occurred from 2006 to 2009. Accordingly, plaintiff cannot demonstrate that he relied on any of the defendants' alleged misrepresentations in deciding whether to enter into the 2003 securities transaction. Moreover, plaintiff cannot link any damages he allegedly suffered to any such misrepresentations. In the Amended Complaint, plaintiff simply alleges that "[a]s a direct and proximate result of Defendants['] wrongful conduct, Plaintiff suffered damages in connection with his respective purchase and sale of [HLXH's] securities . . . ." (Am. Compl. 19.) Plaintiff is essentially employing a "pleading technique that couples a factual statement with a conclusory allegation," which is insufficient to survive a motion to dismiss. In re DRDGold, 472 F. Supp. 2d at 572 (quoting Rombach, 355 F.3d at 176).

Accordingly, plaintiff has failed to adequately plead a claim for securities fraud under Section 10(b) or Rule 10b-5.

E.    Aiding and Abetting

With respect to defendants HMMM and REM, plaintiff appears to be asserting

claims for aiding and abetting securities fraud.  However, "[t]he § 10(b) implied private right of action does not extend to aiders and abettors."  <u>Stoneridge</u>, 552 U.S. at 158; <u>see also</u> <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 177 (1994) (holding that Section 10(b) "does not itself reach those who aid and abet").  As the Supreme Court has held, allowing an aiding and abetting claim under Section 10(b) would "circumvent the reliance requirement" by permitting defendants to be found liable "without any showing that the plaintiff relied upon the aider and abettor's statements or actions."  <u>Central Bank</u>, 511 U.S. at 180 (citations omitted).  Rather, in order to be held liable under Section 10(b), a "secondary actor," such as an accountant or an attorney, "must satisfy each of the elements or preconditions for [primary] liability," <u>Stoneridge</u>, 552 U.S. at 158, including "a material misstatement (or omission) on which a purchaser or seller of securities relies."  <u>Central Bank</u>, 511 U.S. at 191.

Here, the Amended Complaint does not allege a single misrepresentation by either MHHH or REM upon which plaintiff relied in purchasing or selling securities.  Rather, plaintiff alleges that MHHH and REM were aware of certain allegedly false statements in HLXH's financial reports and failed to take action to correct them.  (Am. Comp. 4, 10-11, 14-16.)  Such allegations are insufficient to support a finding of primary liability by MHHH or REM and under <u>Central Bank</u> and <u>Stoneridge</u>, secondary actors "may no longer be held primarily liable under § 10(b) for mere knowledge and assistance in the fraud."  <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 176 (2d Cir. 1998) (citing <u>Central Bank</u>, 511 U.S. at 177) (additional citation omitted).

Based on the foregoing, defendants' motions to dismiss plaintiff's Section 10(b) and Rule 10b-5 claims should be granted.

F.        Statute of Limitations

Even assuming arguendo that plaintiff could state an actionable claim for securities fraud, claims brought pursuant to Section 10(b) of the Exchange Act must be initiated no later "than the earlier of: (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." Plymouth County Ret. Ass'n v. Schroeder, 576 F. Supp. 2d 360, 375 (E.D.N.Y. 2008) (quoting 28 U.S.C. §1658(b)). Where a plaintiff has inquiry notice of the facts constituting a violation, his claim will be deemed time-barred. See In re Merrill Lynch & Co. Research Reports Secs. Litig., 272 F. Supp. 2d 243, 265 (S.D.N.Y. 2003) (holding that where "[p]laintiff was on inquiry notice of her claim that [defendant] purportedly issued misleading research reports over two years before she sued," her claim was "thus time-barred").

In the within action, the Amended Complaint alleges that plaintiff "began to become troubled by the Defendants['] actions" shortly before HLXH acquired Telemark in 2006. (Am. Compl. 2.) Specifically, plaintiff alleges that HLXH stated in its 2006 second quarter 10-QSB that it had started implementation of the roll-up strategy by acquiring Telemark and "that it was going to acquire a real estate broker and a property and casualty insurance company in 2006." (Am. Compl. 8.) According to plaintiff, however, these events did not occur "and the public was never informed of the reason." (Am. Compl. 8.) Plaintiff further alleges that HLXH's 2006 and 2007 10-QSB's "all reported the planned roll-up strategy but [HLXH] failed to implement the plan." (Am. Compl. 8.) These statements form the basis for plaintiff's securities fraud claims, of which he alleges to have had knowledge since as early as 2006.[8] Plaintiff did not commence

_____

[8] With respect to the statements plaintiff asserts to be actionable, they all occurred subsequent to the 2003 securities transaction, which is the only securities transaction alleged to have taken place. As discussed supra, none of the statements that plaintiff alleges to have been

the instant action, however, until April 3, 2009, more than two years after he had knowledge of the facts constituting the alleged securities fraud violation.

Accordingly, plaintiff's Section 10(b) and Rule 10b-5 claims appear to be time-barred.


IV.     Plaintiff's Section 20(a) Claim

Plaintiff also brings claims for control person liability against the Dalenes, individually, pursuant to Section 20(a) of the Exchange Act.  (Am. Compl. 19-20.)  To establish liability under Section 20(a), a plaintiff must demonstrate: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation."  In re PXRE, 600 F. Supp. 2d at 548 (citing Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998)); see also Vladimir, 606 F. Supp. 2d at 496 ("In order to establish control person liability, a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant.")  Since plaintiff has failed to adequately allege a primary violation of Section 10(b), the control person claims under Section 20(a) fail as well.  See, e.g., Vladimir, 606 F. Supp. 2d at 496-97 (finding that since plaintiff had not adequately alleged that the "controlled person" violated the Exchange Act, plaintiff could not state a claim for control person liability against the individual defendants); In re PXRE, 600 F. Supp. 2d at 548 ("Since the Court has held that there is no primary violation under section 10(b) of the Exchange Act, Defendants' motion to dismiss the section 20(a) claim is granted."); Trinity Bui, 594 F. Supp. 2d

---

issued by defendants between 2006 and 2009 can form the basis for a securities fraud violation because plaintiff could not have relied on them when entering into his securities fraud transaction since they did not precede the transaction.

at 373 ("To the extent that Plaintiffs have failed to sufficiently allege predicate violations of §
10(b), the control person claims under § 20(a) of the Exchange Act also fail."); In re Merrill
Lynch, 272 F. Supp. 2d at 264 ("Because Plaintiff has failed to state a claim against the
Defendants for a primary violation of the federal securities law, her claims for control person
liability necessarily fail.").

Based on the foregoing, the HLXH Defendants' motion to dismiss plaintiff's Section
20(a) claim should be granted.


V.      Plaintiff's Cross-Motion for Summary Judgment

As stated supra, plaintiff cross-moves for summary judgment and requests various relief,
including, inter alia, the appointment of a receiver and the disqualification of James Wicks and
his law firm from representing HLXH.  As a threshold matter, plaintiff failed to file a Rule 56.1
statement in support of his motion for summary judgment, as required under the Local Civil
Rules for this district.  This alone is grounds to deny plaintiff's cross-motion.  See Doe v. Nat'l
Bd. of Podiatric Med. Examiners, No. 03 Civ. 4034, 2004 U.S. Dist. LEXIS 7409, at *9
(S.D.N.Y. Apr. 29, 2004) ("When a moving party fails to file a statement as required under
Local Rule 56.1, it is within the discretion of the court to overlook that failure or to deny the
motion."); United States v. Abady, No. 03 Civ. 1683, 2004 U.S. Dist. LEXIS 3775, at *7
(S.D.N.Y. Mar. 9, 2004) (same); Martinez v. Headley, No. 99 CV 1735, 2001 U.S. Dist. LEXIS
4666, at *3 (E.D.N.Y. Jan. 18, 2001) ("Failure to comply with [Rule 56.1] constitutes grounds
for denial of the motion.").  Moreover, in light of the foregoing recommendation that defendants'
motions to dismiss be granted and that this action be dismissed in its entirety, I recommend that

plaintiff's cross-motion for summary judgment be denied as moot.


<u>RECOMMENDATION</u>

For the foregoing reasons, I recommend that defendants' motions to dismiss be granted and that plaintiff's Amended Complaint be dismissed in its entirety. In light of this recommendation, I further recommend that plaintiff's cross-motion for summary judgment be denied as moot.


<u>OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of receipt of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), and 72(b); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert.</u> <u>denied</u>, 513 U.S. 822 (1994); <u>Frank v. Johnson</u>, 968 F.2d 298 (2d Cir. 1992), <u>cert.</u> <u>denied</u>, 506 U.S. 1038 (1992); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).


**SO ORDERED:**

Dated: Central Islip, New York
      January 4, 2010

                                       /s/ E. Thomas Boyle_____
                                       E. THOMAS BOYLE
                                       United States Magistrate Judge