UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 09-CV-1394 (JFB)(AKT)

---

ROBERT A. WILSON,

Plaintiff,

VERSUS

FRANK DALENE; ROY DALENE; HAMPTONS LUXURY HOMES, INC.; RAICH ENDE MALTER & CO., LLP; & MORRIT HOCK HAMROFF & HORWITZ, LLP,

Defendants.

---

**MEMORANDUM AND ORDER**
March 29, 2010

---

JOSEPH F. BIANCO, District Judge:

On April 3, 2009, *pro se* plaintiff Robert A. Wilson (hereinafter "plaintiff" or "Wilson") filed the complaint in this action against defendants Frank Dalene, Roy Dalene, Hamptons Luxury Homes, Inc. (hereinafter "HLXH"), Raich Ende Malter & Co., LLP (hereinafter "REM"), and Morrit, Hock, Hamroff & Horwitz, LLP (hereinafter "MHHH"), (collectively "defendants"), alleging securities fraud under Section 10(b), Rule 10b-5, and Section 20(a) of the Securities Exchange Act of 1934. On June 26, 2009, defendants filed motions to dismiss plaintiff's Amended Complaint in its entirety for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On July 29, 2009, plaintiff filed a motion for summary judgment. By Order dated November 6, 2009, this Court referred defendants' motions and plaintiff's motion to the Honorable E. Thomas Boyle, United States Magistrate Judge, for a report and recommendation. Presently before the Court are plaintiff's objections to Magistrate Judge Boyle's January 4, 2010 Report and Recommendation, in which he recommended that this Court grant defendants' motions to dismiss in their entirety and deny plaintiff's motion in its entirety. For the reasons set forth below, the Court adopts the thorough and well-reasoned Report and Recommendation of Judge Boyle with the exception of the statute of limitations issue. Accordingly, the Court denies defendants' motion to dismiss on statute of limitations grounds but grants the motion to dismiss the

Amended Complaint on the other grounds set forth by Judge Boyle. However, given the nature of the defect and in light of plaintiff's March 1, 2010 letter to the Court and his *pro se* status, the Court grants plaintiff leave to amend his complaint to attempt to correct, if possible, the pleading deficiencies identified in the R&R and this Memorandum and Order.

I. PROCEDURAL HISTORY

On April 3, 2009, *pro se* plaintiff filed a complaint in this action against defendants, and moved by an Order to Show Cause for a preliminary injunction and temporary restraining order against defendants. The temporary restraining order was denied on April 3, 2009, and the motion for a preliminary injunction was denied on April 29, 2009. On May 27, 2009, plaintiff filed an Amended Complaint against defendants.

By letters dated April 22, 2009 and April 24, 2009, defendants requested a pre-motion conference in anticipation of filing motions to dismiss the Amended Complaint. Defendants filed their motions to dismiss on June 26, 2009. Plaintiff responded in opposition on July 29, 2009 and August 6, 2009, and also filed a "motion to dismiss/motion for summary judgment" on those dates. Defendants submitted their opposition and replies on August 17, 2009. By Order dated November 6, 2009, the Court referred the motions to Magistrate Judge E. Thomas Boyle for a report and recommendation.

On November 13, 2009, defendants requested a stay of discovery pending a decision on their motion to dismiss. On November 18, 2009, Magistrate Judge Boyle issued an Order staying discovery pending the outcome of the motions to dismiss. On November 23, 2009, plaintiff moved for a reconsideration of the stay, stating that he had not received notice of defendants' motion for a stay until the date on which it was granted. The motion for reconsideration was granted on November 24, 2009, but the stay of discovery was reinstated after consideration of plaintiff's opposition. On December 7, 2009, plaintiff filed an Order to Show Cause that the Court interpreted as an appeal of Magistrate Judge Boyle's Order staying discovery in the action. Defendants filed their opposition to plaintiff's Order to Show Cause on December 23, 2009.

On January 4, 2010, Magistrate Judge Boyle issued a Report and Recommendation (the "R&R"), recommending that this action be dismissed in its entirety. The R&R further instructed that any objections to the R&R be submitted within ten (10) days of receipt. (*See* Report and Recommendation dated January 4, 2010, at 23.) As indicated by the docket sheet, a copy of the R&R was mailed to plaintiff on January 4, 2010. (*See* Docket Entry [63].) Plaintiff filed objections to the R&R with the Court on January 11, 2010. Defendants Frank Dalene, Roy Dalene, HLXH, and MHHH filed their opposition on January 25, 2010. Plaintiff filed a reply on January 28, 2010. The Court has fully considered all the submissions. For the reasons set forth below, the Court agrees with Judge Boyle's recommendation, and adopts the R&R with the exception of the statute of limitations issue, but will provide plaintiff with an opportunity to file an amended complaint to attempt to cure the defects identified in the pleadings.

## II. STANDARD OF REVIEW

A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); *Walker v. Hood*, 679 F. Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See* Fed. R. Civ. P. 72(b); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997). As to portions of a report to which specific written objections are made, the Court reviews such findings *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

The Court has conducted a review of the full record, including, *inter alia*, the Amended Complaint, the parties' respective submissions in connection with the defendants' motions to dismiss and plaintiff's motion for summary judgment, as well as the R&R, the applicable law and plaintiff's objections. Having reviewed *de novo* all the portions of the R&R to which plaintiff specifically objects, and having reviewed the remainder of the R&R for clear error, the Court adopts the R&R's recommendations that the Amended Complaint should be dismissed for the reasons set forth below, with the exception of the statute of limitations issue, but with leave to re-plead.

## III. DISCUSSION

### A. Violations of Section 10(b) and Rule 10b-5

Plaintiff first agues that Magistrate Judge Boyle incorrectly concluded that plaintiff failed to state a claim for violations of Section 10(b) and Rule 10b-5 of the Exchange Act. Specifically, Judge Boyle found that plaintiff failed to allege any actionable misrepresentations, made with scienter, that were made in connection with a purchase or sale of securities. Judge Boyle further concluded that plaintiff's Amended Complaint had also failed to adequately plead transaction causation or loss causation such as to be actionable.

Plaintiff's objection to the R&R asserts that defendants made a material misrepresentation when they agreed to pursue plaintiff's proposed roll-up strategy in connection with the purchase of plaintiff's stock. Plaintiff contends that this was an actionable misrepresentation because, he claims, at the time, defendants had no intention of pursuing the roll-up strategy. Judge Boyle concluded that plaintiff's Amended Complaint offers no factual allegations in support of his claim that defendants had no intention of using the roll-up strategy, and, thus, must fail. The Court agrees.

In order to successfully plead a violation of Section 10(b) and Rule 10b-5, "plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Hall v. The Children's Place Retail*

3

*Stores, Inc.*, 580 F. Supp. 2d 212, 225 (S.D.N.Y. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007)).

Federal Rule of Civil Procedure 9(b) requires all averments of fraud and the circumstances constituting fraud to be stated with particularity. "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). In addition, "[a]lthough Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must 'allege facts that give rise to a strong inference of fraudulent intent.'" *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, No. 99-CV-3227 (JGK), 2000 U.S. Dist. LEXIS 14043, at *23 (S.D.N.Y. Sept. 22, 2000) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). "These requirements ensure that 'a complaint alleging fraud' is filed 'only after a wrong is reasonably believed to have occurred,' and 'not to find one.'" *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 272 (S.D.N.Y. 2006) (quoting *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972)). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

In addition, the Private Securities Litigation Reform Act ("PSLRA"), enacted in 1995, further heightens the fraud pleading requirements of Rule 9(b) in the context of allegations of securities fraud. The PSLRA states that in a securities fraud case alleging a material misrepresentation or omission "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C § 78u-4(b)(1)(B).

Here, even applying the less stringent standard granted to *pro se* litigants, plaintiff's allegations of fraud fail to comply with the requirements of Rule 9(b) and the PSLRA. Plaintiff's complaint fails to identify particular statements by defendants that were fraudulent. Plaintiff also fails to identify the speaker of the alleged statements and where and when the statements were made. Plaintiff's Amended Complaint only generally references an agreement "between the Plaintiff and the Dalene[s] on a roll-up strategy to create a construction services." (Am. Compl. at 8.) Plaintiff does not identify who particularly made what specific representations regarding the agreement on a roll-up strategy. Accordingly, plaintiff's Amended Complaint fails to adequately plead a claim as required by Rule 9(b) and the PSLRA. *See Kosovich v. Metro Homes, LLC*, No. 09 Civ. 6992 (JSR), 2009 WL 5171737, at *3 (S.D.N.Y. Dec. 30, 2009) ("Here, however, the complaint's allegations are largely against 'defendants' generally, and the complaint repeatedly fails to identify who was responsible for making each alleged misrepresentation or omission, far less specifies the precise content of the alleged misstatements or explains why they are fraudulent."); *Fingar v. Prudential-Bache Sec., Inc.*, 662 F. Supp. 1119, 1123 (E.D.N.Y.

1987) ("The volume of these allegations does not compensate for the complaint's failure to tie them together with more specific details as to the dates and content of relevant statements, the manner in which certain ones were misleading, and how they are connected to the particular defendants named in the complaint.").

Moreover, the Amended Complaint does not adequately connect the alleged misrepresentations with the purchase or sale of securities. As noted in Judge Boyle's thorough and well-reasoned R&R, the only securities transaction alleged in the Amended Complaint occurred in December 2003, when plaintiff transferred his shares in HLXH to the Dalenes. (*See* Am. Compl. at 8.) However, the allegations in the Amended Complaint surrounding this transaction are insufficient to adequately state a claim for relief for misrepresentations "in connection with the purchase or sale of" securities. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 197-98 (2d Cir. 1990) ("[T]he amended complaint does not allege that there was a contractual relationship to buy or sell securities between the parties. There is no reference in the amended complaint to a contract which required [defendant] to resell the La Prairie shares to [plaintiff]. The amended complaint alleged only one agreement: that the purchasing parties would submit a 'combined offer' to Cyanamid to acquire its subsidiaries. Under the agreement as pleaded, if the joint offer were accepted by Cyanamid, [plaintiff] would acquire the La Prairie shares and [defendant] would acquire the Jacqueline Cochran shares. Read in this manner, the gravamen of the amended complaint is that [defendant] breached an agreement to make a joint offer to Cyanamid when it independently purchased the two subsidiaries from Cyanamid. As it appears that the district court correctly held, this allegation is insufficient to state a claim under § 10(b) and Rule 10b-5."); *R.H. Damon & Co. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 992 (S.D.N.Y. 1993) ("[T]he alleged misrepresentations pertain to the conditions under which the defendants would compensate the plaintiffs for their services. As such, plaintiffs do not allege a misrepresentation as to the value of a security. Without such misrepresentations plaintiffs cannot satisfy the 'in connection with' language of § 10(b) and Rule 10b-5. While it is possible that defendants['] alleged misrepresentations pertain to plaintiffs' compensation in connection with their services, these facts certainly do not implicate the '34 Act."); *see also Troyer v. Karcagi*, 476 F. Supp. 1142, 1148 (S.D.N.Y. 1979) ("To satisfy the 'in connection with' requirement, however, more than a purchase is required. That is, there must be a causal connection between a defendant's misstatements or omissions and the plaintiff's purchase." (citing *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860 (2d Cir. 1968))).

Instead, the vast majority of plaintiff's allegations involve alleged wrongdoing or fraudulent conduct that occurred well after the 2003 stock transaction. The R&R correctly notes that the only statements that are actionable are the ones made in 2003 because that is when the alleged securities transaction occurred. Plaintiff cannot rely on statements that occurred after the securities transaction at issue in support of his claim of misrepresentation. *Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F. Supp. 1066, 1080 (S.D.N.Y. 1987) ("Where the only manipulative or deceptive acts identified in a complaint occur after a challenged securities purchase or sale, a court must dismiss the complaint as failing to state a cause of action for federal securities fraud."); *Troyer*, 476 F.

Supp. at 1148 ("There can be no such causal connection where the misstatement or omission occurred after the purchase.").

The Court further notes that the decision to refrain from buying or selling securities does not give rise to an actionable claim under Section 10(b). *See, e.g.*, *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377 (LAK)(AJP), 2007 WL 431864, at *9 (S.D.N.Y. Feb. 9, 2007) ("Section 10(b) and Rule 10b-5 prohibit securities fraud 'in connection with the purchase or sale' of securities. Accordingly, to state a claim thereunder, a plaintiff must allege that he was an actual purchaser or seller of securities. Among the potential plaintiffs barred by this rule are persons injured by 'decisions to hold or refrain from trading.'" (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 402 (S.D.N.Y. 2005))); *see also Caiola v. Citibank, N.A.*, 295 F.3d 312, 322 (2d Cir. 2002) ("Under the first element—fraud committed 'in connection with the purchase or sale of any security'—standing is limited to actual purchasers or sellers of securities."); *First Equity Corp. v. Standard & Poor's Corp.*, 869 F.2d 175, 180 n.2 (2d Cir. 1989) ("Under *Blue Chip*, plaintiffs suing under Section 10(b) of the Securities Exchange Act of 1934 may recover only for losses that result from decisions to buy or sell, not from decisions to hold or refrain from trading."); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 446 F. Supp. 2d 163, 189-90 (S.D.N.Y. 2006) ("Defendants argue that plaintiffs may only bring a [S]ection 10(b) claim with respect to actual purchases or sales of securities, and may not bring any claims that relate to the retention of securities. Defendants are correct."). Accordingly, plaintiff may not argue that he retained the securities he received in 2003 as a result of fraud by the defendants.

In addition, the PSLRA requires that in cases where a particular state of mind on the part of the defendant is required, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A plaintiff can establish a "strong inference" of scienter by alleging either: (1) facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness," or (2) facts showing that defendants had "both motive and opportunity to commit fraud." *In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 534 (S.D.N.Y. 2009). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). A strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314.

Plaintiff attempts to argue that the scienter requirement is met because "[w]hat could be a stronger inference of scienter than people who make an agreement of exchange th[e]n refuse to follow through on their portion of the exchange." (Pl.'s Objection at 5.) Indeed, much of plaintiff's objections to the R&R argues that the Dalenes and HLXH breached a contract with him and that, therefore, he has successfully alleged and proven that they acted with scienter and committed securities fraud. Although entering into a contract with no intention of moving forward with the agreement may indicate scienter, *see Wharf Holdings Ltd. v. United Int'l Holdings*, 532 U.S. 588, 596 (2001), a party's breach of an

agreement, without more, will not constitute scienter for purposes of a claim of fraud. *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (noting the "distinction between a prospective business partner's promissory statement[s] as to what will be done in the future, which give rise only to a breach of contract claim, and his or her false representation[s] of present fact, which give rise to a separable claim of fraudulent inducement" (quotation omitted)); *see also U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) ("Simple breach of contract is not fraud, but making a promise while planning not to keep it is fraud."). Instead, plaintiff must allege specific statements by defendants that tend to suggest that they did not intend to go forward with the agreement, rather than relying on the conclusory statement that the defendants did not intend to honor the contract. *E.g.*, *In re U.S. West, Inc. Sec. Litig.*, 65 F. App'x 856, 862 (3d Cir. 2003) ("Nacchio's statements [that 'Every merger can be intervened on; it only costs money'] are insufficient to give rise to an inference that Qwest and Nacchio either acted without good faith when entering into and later circulating the agreement or never intended to comply with the non-solicitation provision."). Plaintiff does not allege with specificity any facts suggesting that the Dalenes and HLXH did not intend to go forward with use of the roll-up strategy *at the time of the agreement*. Plaintiff only points to facts indicating that the Dalenes and HLXH ultimately did not proceed with the alleged agreement. This Court, like others in this Circuit, "applies Rule 9 strictly to prevent a plaintiff with a largely groundless suit from conducting extensive discovery in the hope that the process will ultimately reveal relevant evidence. To pass muster in this Circuit a complaint must allege with some specificity the acts constituting the fraud. Conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Lerner v. FNB Rochester Corp.*, 841 F. Supp. 97, 102 (W.D.N.Y. 1993) (internal citation omitted). The Dalenes' statements can alternatively be characterized as "forward-looking statements" about "plans and objectives of management for future operations." *In re EVCI Colls. Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 101 (S.D.N.Y. 2006).

Furthermore, plaintiff's Amended Complaint in fact contains an alternate explanation for the Dalenes' and HLXH's failure to go through with the proposed transaction—"present economic conditions." (Am. Compl. at 5.) Moreover, this alleged statement was made to plaintiff by one of the Dalenes on March 4, 2009—six years after the alleged agreement. This supports an opposing inference of nonfraudulent intent. Furthermore, the fact that this statement was made six years after the agreement makes it more plausible that, over time, economic conditions influenced the Dalenes and HLXH to abandon the proposed roll-up plan rather than, as plaintiff alleges, that defendants never intended to go through with the transaction. *See Tellabs, Inc.*, 551 U.S. at 314. Thus, plaintiff's Amended Complaint fails to adequately allege that the Dalenes and HLXH acted with scienter and made a fraudulent misrepresentation at the time of their transaction.

Furthermore, the Court notes that, even assuming that plaintiff had adequately alleged the scienter requirement in connection with a material misrepresentation, as discussed in the R&R, plaintiff has also failed to adequately allege the other elements of Section 10(b) and Rule 10(b)(5) violations—namely, reliance, economic loss, and causation. Plaintiff's

Amended Complaint does not state losses suffered by plaintiff as a result of the alleged misrepresentation regarding the roll-up at the time of the 2003 securities transaction. To adequately state a claim of securities fraud, the plaintiff must allege "a causal connection between defendants' non-disclosures and the subsequent decline in the value of [the security]." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). Thus, this Court adopts Magistrate Judge Boyle's R&R inasmuch as it recommends granting the Dalenes' and HLXH's motion to dismiss the allegations of securities fraud under Section 10(b) and Rule 10b-5 against them.

B. Statute of Limitations

Judge Boyle found that, even if plaintiff had adequately stated a claim for relief for securities fraud, plaintiff's cause of action was barred by the statute of limitations because claims brought pursuant to Section 10(b) of the Exchange Act must be initiated no later than the earlier of two years after the discovery of the facts constituting the violation or five years after such violation. *See Plymouth County Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 375 (E.D.N.Y. 2008). Plaintiff argues that his action falls within the statute of limitations. The Court concludes that there is insufficient information in the Amended Complaint to determine as a matter of law, at the motion to dismiss stage, that plaintiff was on notice of the fraud in 2006 such that the two-year limitations bars his lawsuit. Thus, the motion to dismiss on statute of limitations grounds is denied.

As a threshold matter, the Court notes that plaintiff, in support of is argument, cites extensively from an amicus curiae brief submitted by the Securities and Exchange Commission in *AIG Asian Infrastructure Fund L.P. v. Chase Manhattan Asia Limited*, 122 F. App'x 541 (2d Cir. 2005), which seems to argue that the proper statute of limitations for private fraud actions should be within five years of the violation. Plaintiff next argues that the Second Circuit opinion in *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406 (2d Cir. 2008), supports his position. However, that case held that a private federal action for securities fraud must be commenced before the earlier of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation." *Id.* at 411 (citing 28 U.S.C. § 1658(b)). The Second Circuit noted that "[t]he two-year statute of limitations for securities fraud claims under the Exchange Act begins to run only after the plaintiff 'obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge.'" *Id.* (quoting *LC Capital Partners, LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148, 154 (2d Cir. 2003)).

"Courts can 'readily resolve the issue' of inquiry notice as a matter of law on a motion to dismiss—as has been done in 'a vast number of cases' in this circuit—where 'the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint.'" *Staehr*, 547 F.3d at 412 (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005)); *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) (concluding that whether an investor of ordinary intelligence would be on inquiry notice based on circumstances described in the complaint may be resolved as a matter of law). Moreover, "[a]n investor does not have to have notice of

8

the entire fraud being perpetrated to be on inquiry notice." *Dodds*, 12 F.3d at 352.

Here, Magistrate Judge Boyle correctly noted that plaintiff has alleged that he had concerns in 2006 about the Dalenes' failure to move forward with the roll-up strategy. Specifically, in his Amended Complaint, plaintiff states that he "began to become troubled by the Defendants['] actions" shortly before HLXH acquired Telemark in 2006. (Am. Compl. at 2.) The Amended Complaint further stated that there were errors with the 2006 10-KSBs and 2006 10-QSBs. (*Id.* at 8-9.) Plaintiff also alleged that "[t]he 2006 [second] quarter 10-QSB reports that the company had started implementation of its business model by acquiring Telemark and that it was going to acquire a real estate broker and a property and casualty insurance company in 2006. This did not [occur] and the public was never informed of the reason." (Am. Compl. at 8.) Plaintiff further alleged that "[t]he 2006 [third] quarter 10-QSB, 2006 10-KSB, 2007 [first, second, and third] quarter 10-QSB and the 2007 10-KSB all reported the planned roll-up strategy but the Company failed to implement the plan." (*Id.*)

However, although plaintiff acknowledged that he had concerns in 2006 about the failure to implement the roll-up strategy, the Court cannot conclude at the motion to dismiss stage that such a concern is sufficient to put plaintiff on notice as to the alleged fraud. In other words, there is insufficient basis in the Amended Complaint to warrant application of the two-year statute of limitations clock in 2006. Thus, the motion to dismiss on statute of limitations grounds is denied.

C. Claims against Raich Ende Maulter & Co. and Moritt Hock Hamroff & Horwitz LLP

Judge Boyle determined that plaintiff's claims against REM and MHHH must fail. In plaintiff's objections, he argues that "by not informing the Commission of the Dalenes['] breach of contract both of the defendants violated Title I, III, & IX and Section 103, 108, 307, & 902 of Sarbanes Oxley and the PCAOB Rules of Conducted, AU section 110.02." (Pl.'s Objection ¶ 8.) Plaintiff continues that "[t]his is an automatic violation of the Securities Exchange Act of 1934 and Section 10(b) and Rule 10(b)(5) under Section 3(b)(1) of Sarbanes Oxley. In fact, MHHH knowing that the opening price was based on implementation of the roll-up sold stock on the opening and did not carry out their responsibility to protect the shareholders." (*Id.*)

As discussed extensively *supra*, to state a cause of action under Section 10(b) and Rule 10b-5, "a plaintiff must plead that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action cause [plaintiff] injury." *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 266 (2d Cir. 1996) (citation omitted). "It is well established that to meet the 'in connection with' requirement [of Section 10(b)], the fraud practiced must have been prior to or contemporaneous with" the purchase or sale of securities. *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 n.3 (S.D.N.Y. 1989) (citation omitted). Furthermore, as discussed above, Federal Rule of Civil Procedure 9(b) requires that claims of fraud be "stated with particularity." Fed. R. Civ. P. 9(b).

9

The Court concludes that Judge Boyle's R&R correctly analyzed the deficiencies in plaintiff's claims that REM and MHHH aided and abetted the alleged securities fraud by the Dalenes and HLXH, and further notes that without any underlying violation, plaintiff cannot successfully allege a claim of aiding and abetting fraud. *See Gabriel Capital, L.P. v. NatWest Finance, Inc.*, 94 F. Supp. 2d 491, 500 (S.D.N.Y. 2000). Plaintiff's objections to the R&R seem to suggest that plaintiff is alleging that REM and MHHH did not aid and abet securities fraud committed by the other defendants but rather that they were the primary violators of Section 10(b) and Rule 10b-5 themselves. If plaintiff's Amended Complaint does not contain an aiding and abetting claim against REM and MHHH but rather attempts to assert a free-standing violation of Section 10(b) and Rule 10b-5 by REM and MHHH as primary violators, this claim too must fail.

A defendant "must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).'" *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (citation omitted). However, "[t]here is no requirement that the alleged violator directly communicate misrepresentations to [investors] for primary liability to attach." *Id.* (citation omitted).

The Amended Complaint lacks particularized allegations of false or misleading statements by REM and MHHH. Rather, the Amended Complaint merely alludes to "malpractices of Raich Ende Malter & Co. . . . ." (Am. Compl. at 4.) Plaintiff further alleges unrelated misconduct by REM's managers involving other companies. The primary thrust of plaintiff's allegations regarding REM and MHHH is that they knew of the problems with HLXH's financial reports on Form 10-KSB for 2006 and 2007 and "they chose to do nothing." (*Id.*) Plaintiff similarly alleges in the Amended Complaint that he alerted REM and MHHH of problems with the balance sheet and 2006 10-KSB but that they did not respond or correct the alleged inaccuracies. Plaintiff also contends that REM also filed an independent certification of HLXH's balance sheet for the 2007 10-KSB. (Am. Compl. at 13.)

Plaintiff's allegations regarding REM and MHHH are deficient in several respects. First, plaintiff fails to explain with specificity how the alleged statements or inaction by these defendants were misleading. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("[P]laintiffs must do more than say that the statements in the press releases were false and misleading; they must demonstrate with specificity why and how that is so."). Plaintiff further fails to allege facts supporting his contention that these defendants acted with scienter or that any sale of securities was made subsequent to or contemporaneous with this alleged misconduct. Indeed, plaintiff's own sale of securities—the only securities transaction specifically referenced in the Amended Complaint—occurred in 2003, years prior to the alleged misconduct by REM and MHHH.[1]

---

[1] Plaintiff's Amended Complaint also states that "All defendants were aware that stockbrokers and investor[s] were informed of the strategy of the Company and that was the only reason they purchased to [sic] stock." (Am. Compl. at 14.) This statement is too vague and conclusory to support plaintiff's claims, and further, plaintiff cannot bring a claim on behalf of the corporation

Plaintiff's Amended Complaint simply alleges that REM and MHHH were "aware of the following problems . . . but never did anything to protect the minority shareholders." (Am. Compl. at 14, 15.) These allegations, without more, are insufficient to allege liability of REM and MHHH under Section 10(b) and Rule 10b-5. *See, e.g.*, *Varghese v. China Shenghuo Pharma. Holdings, Inc.*, No. 08 Civ. 7422 (VM), 2009 WL 4668579, at *9 (S.D.N.Y. Dec. 9, 2009) ("When pleading fraud against auditors, the standards for alleging scienter are especially stringent. Plaintiffs may plead recklessness, but the recklessness must entail a mental state so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." (internal quotation marks and citations omitted)); *In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304, 314 (S.D.N.Y. 2009) ("Although it is well settled that a lawyer who makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under § 10(b) and Rule 10b-5(b), it is equally well settled that a secondary actor cannot incur primary liability . . . for a statement not attributed to the actor at the time of its dissemination precisely because [s]uch a holding would circumvent the reliance requirements of the Act." (internal citation omitted)); *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 398 (S.D.N.Y. 2007) ("[T]here is a high standard for pleading auditor scienter. Plaintiffs must allege that [t]he accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful. . . . At best, plaintiffs have alleged that a reasonable auditor would have discovered the problems with the Company's valuation of the deferred tax assets and internal controls."); *In re Kendall Square Res. Corp. Sec. Litig.*, 868 F. Supp. 26, 28 (D. Mass. 1994) (where accountant did not issue a report on the company's financial statements but merely "reviewed and approved" them, the accountant could not be liable for a material misstatement). *See generally Wright*, 152 F.3d at 173-76.

The Amended Complaint does not allege that REM caused the "problems" in the financial reports but rather merely alleges that it did nothing about them. Plaintiff does not point to specific deficiencies in the audit procedures employed by REM or specific "red flags" that were ignored by REM. Rather, plaintiff's Amended Complaint contains mere "'blanket statements of wrongdoing,'" by these defendants, *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 238 (S.D.N.Y. 2004) (quoting *Segarra v. Messina*, 153 F.R.D. 22, 28 (N.D.N.Y. 1994)), and fails to identify the specific injury caused by the alleged wrongdoing.

To the extent plaintiff purports to bring a "duty to disclose" claim against defendants REM and MHHH, it is well established that a firm "has no duty to disclose fraudulent misconduct . . . under Section 10(b) where it

---

or someone else who bought or sold the securities as a result of defendants' allegedly fraudulent acts. *See, e.g.*, *Ingenito v. Bermec Corp.*, 376 F. Supp. 1154, 1176 (S.D.N.Y. 1974) ("[I]f a plaintiff cannot allege that he bought or sold the security involved in the fraud, his claim must fail 'both on proof of loss and the causal connection with the alleged violation of the Rule.'" (citation omitted)); *see also Nationwide Cellular Serv., Inc. v. Am. Mobile Commc'ns, Inc. CFC*, Nos. 90 Civ. 6493 (LBS), 91 Civ. 3587 (LBS), 1991 WL 233284, at *16 (S.D.N.Y. Oct. 29, 1991) ("[A] claim of waste belongs solely to the injured corporation, and plaintiff therefore lacks standing to sue in its individual capacity.").

11

has not given some representation or certification, such as an opinion or certified statement, or has not invited the public to rely on the firm's financial judgment at the time." *In re Gas Reclamation, Inc. Sec. Litig.*, 659 F. Supp. 493, 505 (S.D.N.Y. 1987); *accord Pahmer v. Greenberg*, 926 F. Supp. 287, 306 (E.D.N.Y. 1996). As a threshold matter, the Amended Complaint does not assert that defendant MHHH made any affirmative representations regarding HLXH. Plaintiff's Amended Complaint does not point to any affirmative misrepresentations made by MHHH to shareholders or the investing public on which those shareholders or investors relied to their detriment. Nor does plaintiff allege that he himself relied upon any representations by MHHH. *See SEC v. Wolfson*, 539 F.3d 1249, 1258 n.14 (10th Cir. 2008) ("[A] private litigant must also show reliance on the fraud and the existence of damages or injuries suffered as a result thereof."). Thus, the Amended Complaint does not allege that MHHH violated a duty to disclose certain information to investors or shareholders. Accordingly, defendant MHHH's motion to dismiss plaintiff's claims that it violated Section 10(b) and Rule 10b-5 is granted.

Plaintiff alleges that defendant REM made one affirmative representation: a certification included with the 2007 10-KSB, that REM had audited the consolidated balance sheet of HLXH and determined that the financial statements fairly represented the financial position of HLXH as of December 31, 2007. (*See* Am. Compl. at 13.) An actionable claim under the Securities Act or the Exchange Act must plead an omission that involves information that the defendant has a duty to disclose.[2] *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)). Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming all of the requirements for primary liability under Rule 10b-5 are met. *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994). "[A]n accountant violates the 'duty to correct' and becomes primarily liable under § 10(b) and Rule 10b-5 when it (1) makes a statement in its certified opinion that is false or misleading when made; (2) subsequently learns or was reckless in not learning that the earlier statement was false or misleading; (3) knows or should know that potential investors are relying on the opinion and financial statements; yet (4) fails to take reasonable steps to correct or withdraw its opinion and/or the financial statements; and (5) all the other requirements for liability are satisfied." *Overton v. Todman & Co., CPAs, P.C.*, 478 F.3d 479, 486-87 (2d Cir. 2007). Furthermore, "an accountant need correct only those particular statements set forth in its opinion and/or the certified financial

---

[2] "There are two ways that a plaintiff can establish a duty to disclose: (1) through an explicit regulatory or statutory requirement, or (2) when the omitted information is otherwise material." *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008). "To be material, the information need not be such that a reasonable investor would necessarily change his investment decision based on the information, as long as a reasonable investor would have viewed it as significantly altering the 'total mix' of information available." *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997) (citation omitted).

statements. Unless an accountant exchanges its role for the role of an insider, an accountant is under no duty to divulge information collateral to the statements of accuracy and financial fact set forth in its opinion and the certified financial statements, respectively." *Id.* at 488 (internal citation omitted).

As discussed *supra*, plaintiff's allegations against REM fail to identify how REM made a material misrepresentation to the plaintiff in connection with the sale of a security. *See Forsberg v. Always Consulting, Inc.*, No. 06-CV-13488 (CS), 2008 WL 5449003, at *15 (S.D.N.Y. Dec. 31, 2008) (dismissing a complaint for failure to demonstrate that defendant made a material misrepresentation to the plaintiff in connection with the sale of a security). Plaintiff fails to allege that REM had any direct or indirect involvement with HLXH's sale of securities to the plaintiff or any other investors. *See id.* Nor does plaintiff allege how REM's alleged omissions misled plaintiff and caused plaintiff to suffer economic loss. Instead, plaintiff's Amended Complaint, though more detailed than his initial complaint, contains mere conclusory statements and allegations regarding REM's fraudulent conduct. At no point does plaintiff connect REM's alleged omissions to specific injury suffered by plaintiff. Conclusory allegations of fraud will be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Thus, plaintiff's Amended Complaint also fails to state a claim that REM made a material misstatement or omission by failing to disclose certain information to which plaintiff alleges REM was privy.

In sum, plaintiff's Amended Complaint fails to state a claim for violation of Section 10(b) and Rule 10b-5 against REM and MHHH. Accordingly, the Court adopts Judge Boyle's recommendation and grants REM's and MHHH's motions to dismiss plaintiff's Section 10(b) and Rule 10b-5 claims against them.

### D. Section 20(a) Claims

Liability for violations of § 20(a) is derivative of liability for violations of § 10(b). *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996). Accordingly, without any primary violation of Section 10(b), plaintiff's claims for violation of Section 20(a) must be dismissed.

### IV. OPPORTUNITY TO REPLEAD

"Where dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Shelton v. Trs. of Columbia Univ.*, 263 F. App'x 648, 649 (2d Cir. 2007) (summary order) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *accord Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (holding that the Court should give a plaintiff an opportunity to amend if the Court cannot "rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim" (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (internal quotation marks omitted))); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any

13

indication that a valid claim might be stated." (quotation omitted)).

As outlined in detail in this Memorandum and Order, there are a number of pleading defects with regards to plaintiff's claims. However, although it is unclear whether all of the pleading defects can be cured, the Court is unable to determine at this juncture that any attempt to correct these pleading defects would necessarily be futile. Therefore, the Court grants plaintiff one opportunity to amend his complaint to provide additional allegations, if possible, and to provide clarification (as outlined in this Memorandum and Order) regarding plaintiff's claims. Specifically, if plaintiff does file a Second Amended Complaint, he should plead with greater specificity the facts and circumstances surrounding (1) his purchase or sale of securities in 2003; (2) the specific statements made by defendants that plaintiff alleges were material misrepresentations (including the time of such statements); (3) the circumstances giving rise to an inference of scienter on the part of defendants, specifically regarding their intent in 2003 not to follow through with the roll-up plan; (4) causation; and (5) specific losses suffered by plaintiff as a result of the alleged securities fraud. To the extent plaintiff intends to replead allegations against MHHH and REM, as with the claims against HLXH and the Dalenes, plaintiff's Second Amended Complaint should also contain greater detail regarding their alleged role in the fraud. The amended complaint must be captioned as plaintiff's "Second Amended Complaint" and must bear the same docket number as this Memorandum and Order.

V. CONCLUSION

For the foregoing reasons, the Court adopts the R&R with the exception of the statute of limitations issue. Accordingly, the defendants' motion to dismiss on statute of limitations grounds is denied, but the motion to dismiss on the other grounds identified in the R&R is granted for the reasons set forth in the R&R. Given the dismissal of the complaint, plaintiff's motion for summary judgment is denied.[3] However, plaintiff is granted leave to file a Second Amended Complaint to address the pleading defects identified by the Court in the R&R and this Memorandum and Order.

The Court will conduct a telephone conference on Monday, April 19, 2010, at 11:00 a.m., to discuss the schedule for the filing of the Second Amended Complaint and any other issues the parties wish to address. A copy of this Order and the R&R has been mailed to *pro se* plaintiff.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 29, 2010
Central Islip, New York

\* \* \*

Plaintiff is proceeding *pro se*. The attorneys for defendants Frank Dalene, Roy Dalene, and

---

[3] Because the Court grants defendants' motions to dismiss the Amended Complaint, the Court also denies as moot plaintiff's Order to Show Cause, filed December 7, 2009, which the Court interpreted as an appeal of Magistrate Judge Boyle's Order staying discovery in the action.

Hamptons Luxury Homes, Inc. are James M. Wicks and Lucia Deschamps Bauknight of Farrell Fritz, P.C., 1320 Reckson Plaza, Uniondale, NY 11556-1320. The attorneys for defendants Raich Ende Malter & Co., LLP are Peter J. Larkin and William J. Kelly of Wilson, Elser, Moskowitz, Edelman & Dicker, 3 Gannett Dr., White Plains, NY 10604. The attorneys for defendant Moritt Hock Hamroff & Horwitz, LLP are Matthew J. Bizzaro and Marian Rice of L'Abbate, Balkan, Colavita & Contini, LLP, 1001 Franklin Avenue, 3rd Floor, Garden City, NY 11530.